UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SANDRA W.[1]                              )
                                          )
                    Plaintiff,            )
                                          )
            vs.                           )        No. 1:20-cv-00919-JMS-MJD
                                          )
ANDREW SAUL, *Commissioner of the Social* )
*Security Administration*,                )
                                          )
                    Defendant.            )

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Sandra W. appeals the denial of disability insurance benefits ("DIB") by the Social Security Administration ("SSA").  On May 17, 2017, Sandra W. filed an application for DIB, alleging disability onset date of March 1, 2015.  [Filing No. 10-2 at 56; Filing No. 10-3 at 1.]  The claim was denied initially on July 10, 2017, [Filing No. 10-2 at 56-63], and also upon reconsideration on September 25, 2017, [Filing No. 10-2 at 64-70].  Administrative Law Judge T. Whittaker (the "ALJ") held a hearing on February 22, 2019, and ultimately denied the claim on March 26, 2019.  [Filing No. 10-2 at 15.]  On January 17, 2020, the SSA Appeals Council denied Sandra W.'s request for review.  [Filing No. 10-2 at 15.]  Sandra W. filed this action pursuant to 42 U.S.C. § 405(g) on March 25, 2020, asking the Court to review the ALJ's decision.  [Filing No. 11 at 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the [Commissioner] to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). However, courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings, and this power includes the ability to remand the case with instructions for the Commissioner to calculate and award benefits to the applicant. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

## II.
### BACKGROUND

Sandra W. was 55 years old on the alleged onset disability date. [*See* Filing No. 10-2 at 36.] In connection with her applications for benefits and during her testimony before the ALJ, she reported the following conditions: chronic obstructive pulmonary disorder ("COPD"); asthma; history of sarcoidosis; pulmonary nodule; history of chronic bronchitis; irritable bowel syndrome;

3

hypertension; edema; hyperlipidemia; endocrine disorder; contact dermatitis; hypothyroidism; status post hysterectomy; status post cholecystectomy; allergic rhinitis; allergies; post-menopausal disorder; colon polyp; diverticulosis; internal hemorrhoids; planta fasciitis; status post excision schwannoma for Morton's neuroma in the left foot; proctitis; anxiety; and depression. [Filing No. 10-2 at 17.] Sandra W. has a high school education and previously worked as a kitchen helper, cashier, and car runner at a car lot. [Filing No. 10-2 at 36-37; Filing No. 10-2 at 43-46.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Sandra W. was not disabled. [Filing No. 10-2 at 15-25.] Specifically, the ALJ found as follows:

- Sandra W. last met the insured status requirements of the Social Security Act on September 30, 2016. [Filing No. 10-2 at 17.]

- At Step One, Sandra W. did not engage in substantial gainful activity[3] from the onset date through her date last insured. [Filing No. 10-2 at 17.]

- At Step Two, through Sandra W.'s date last insured, she had the following severe impairments: COPD; asthma; history of sarcoidosis; pulmonary nodule; and history of chronic bronchitis. [Filing No. 10-2 at 17.] She also had the following nonsevere impairments: irritable bowel syndrome; hypertension; edema; hyperlipidemia; endocrine disorder; contact dermatitis; hypothyroidism; status post hysterectomy; status post cholecystectomy; allergic rhinitis; allergies; post-menopausal disorder; colon polyp; diverticulosis; internal hemorrhoids; plantar fasciitis; status post excision schwannoma for Morton's neuroma in the left foot; proctitis; anxiety; and depression. [Filing No. 10-2 at 17-19.]

- At Step Three, Sandra W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 10-2 at 19.]

---

[2] The remaining relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Three but before Step Four, through the date last insured, Sandra W. had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: no exposure to extreme cold or extreme heat, no concentrated exposure to humidity, and no concentrated exposure to respiratory irritants such as dusts, fumes, odors, and gases. [Filing No. 10-2 at 19-22.]

- At Step Four, Sandra W. was unable to perform any of her past relevant work. [Filing No. 10-2 at 23.]

- At Step Five, considering Sandra W.'s age, education, work experience, and RFC, she was able to perform jobs existing in significant numbers in the national economy, including hand packager and patient transporter. [Filing No. 10-2 at 23-24.]

### III.
### DISCUSSION

Sandra W. raises two challenges to the ALJ's decision, which the Court reorders as follows: (1) whether the ALJ erred by failing to account for Sandra W.'s mild difficulties with concentrating, persisting, or maintaining pace in the RFC assessment and in the questioning of the vocational expert ("VE"); and (2) whether, after finding that Sandra W.'s COPD and asthma were both severe, the ALJ erred in deciding that those conditions did not limit her ability to stand, walk, lift, carry, push, or pull without an opinion from a physician on the issue. [Filing No. 13 at 4.] The Court will address each of these arguments in turn.

### A. Whether the ALJ Failed to Address Sandra W.'s Mental Impairments in the RFC or Hypothetical Questions to the VE

Sandra W. argues that her mental impairments were not properly considered by the ALJ. [Filing No. 13 at 20.] She notes that during a December 2012 examination, she was "anxious and showed worry," and had taken Fluoxetine for her depression and Klonopin for her anxiety. [Filing No. 13 at 22-23.] Nonetheless, she argues, the medications "did not eliminate the impairments." [Filing No. 13 at 23.] Sandra W. asserts that the ALJ "did not include any psychological limitations in the RFC." [Filing No. 13 at 23.] While Sandra W. does not claim that a nonsevere mental limitation by itself "prevents an individual from functioning satisfactorily," a non-severe

5

impairment "*may be enough*, when combined with other severe and non-severe impairments, to be the difference between an individual who is able to sustain full-time, competitive employment and one who is not." [Filing No. 13 at 23.] As such, she argues, failure to ask hypothetical questions about Sandra W.'s mental health impairments to the vocational expert should result in a remand. [Filing No. 13 at 24 (citing *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004)).]

In response, the Commissioner contends that the ALJ did indeed evaluate Sandra W.'s mental impairments but found that the record was "devoid of 'persuasive evidence suggesting any limitations in claimant's concentration, persistence, or pace.'" [Filing No. 14 at 21-22 (citing Filing No. 10-2 at 18).] The Commissioner references the ALJ's finding that Sandra W. had normal cognitive functioning, was stable on follow-up medical appointments, and never received mental health treatment beyond medication. [Filing No. 14 at 21.] The Commissioner argues that the ALJ incorporated as much medical assessment as justified by the medical record. [Filing No. 14 at 23 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)).] The Commissioner asserts that Sandra W. "has not identified any treating, examining or reviewing medical source opinion that assessed limits on her mental functioning" and therefore has failed to sustain her burden of demonstrating functional limitations that the ALJ did not accommodate. [Filing No. 14 at 23.]

In reply, Sandra W. asserts that all parties agree that "all limitations, even those that are not severe, must be included in the RFC and hypothetical questions to the VE." [Filing No. 17 at 8.] She reiterates that the ALJ did find a mild limitation in concentration, persisting, or maintaining pace and it was legal error for the ALJ not to incorporate that finding into the RFC assessment and the questioning of the VE. [Filing No. 17 at 8-11.] Because the disability determination is based

upon hypothetical questioning that is fundamentally flawed, and because it does not account for all of her limitations, Sandra W. contends, the decision cannot stand. [Filing No. 17 at 11.]

In evaluating whether a Social Security claimant is eligible for benefits, an ALJ must construct a logical "bridge between the medical evidence . . . and the conclusion that she is able to work." *See Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012). That logical bridge must be supported by "substantial evidence." *Stevenson v. Chater*, 1151, 1153 (7th Cir. 1997). Evidence is substantial "if a reasonable person would accept it as adequate to support the conclusion." *Young*, 362 F.3d at 1001 (citing *Stevenson*, 105 F.3d at 1153).

The Seventh Circuit Court of Appeals has noted that "an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F. 3d 471, 477 (7th Cir. 2009) (citation omitted); *accord* 20 C.F.R. § 404.1520(c) (2020) ("If you do not have any impairment or *combination* of impairments which significantly limits your physical or mental ability to do basic work activities, we will find you do not have a severe impairment . . . ." (emphasis added)). Further, an ALJ must "orient the VE to the totality of a claimant's limitations," including "deficiencies of concentration, persistence and pace." *O-Connor-Spinner*, 627 F.3d at 619. Indeed, the "most effective way to ensure that the VE is appraised fully of the claimant's limitations is to include them all directly in the hypothetical." *Id.*

There are exceptions to the rule requiring the ALJ to describe all of a claimant's limitations in concentration, persistence, and pace to a VE. First, the ALJ need not recite each limitation "when the record shows that the VE independently reviewed the medical record or heard testimony addressing those limitations." *Id.* This exception does not apply, however, when "the ALJ poses a series of increasingly restrictive hypotheticals to the VE, because in such cases . . . the VE's

attention is focused on the hypotheticals and not on the record." *Id.*  Indeed, the nature of such questioning prohibits the VE from "considering physical, psychological, or cognitive limitations that he may have absorbed either through reviewing the evidence in the record or by listening to the hearing testimony." *Young*, 362 F.3d at 1003.

A second exception exists "when it was manifest that the ALJ's alternative phrasing" of concentration, persistence, and pace "specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619.  Such an exception has been applied, for example, when the ALJ asked about "repetitive, low-stress" work when the mental impairment was "at the root" connected to a panic disorder, or when the claimant's underlying conditions giving rise to limitations in concentration, persistence, and pace were mentioned and "the link between the claimant's [condition] and his concentration difficulties was apparent enough that incorporating those difficulties by reference to his [condition] was consistent with the general rule." *Id.* at 619-20.

Thus, "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical" to "assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs claimant can do."  *See id.* at 621.  "When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young*, 362 F.3d at 1004.

In this case, the ALJ made the following findings during the during part three of the "paragraph B" analysis of Sandra W.'s mental impairments:

> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant had a mild limitation.  The record is devoid of persuasive evidence suggesting

any limitations in the claimant's concentration, persistence, or pace. She exhibited normal cognitive functioning and she presented psychiatrically stable on follow up medical appointments (Ex. 7F). The claimant never submitted to a mental status examination and she never received mental health treatment beyond medication. Thus, the undersigned finds the claimant would have had no more than a mild limitation in the aforementioned functional area.

[Filing No. 10-2 at 18]. The ALJ notes that regarding "concentrating, persisting or maintaining pace . . . , the claimant had a mild limitation." [Filing No. 10-2 at 18]. However, the next sentence undermines that finding, where the ALJ writes, "The record is devoid of persuasive evidence suggesting any limitations on the claimant's concentration, persistence, or pace." [Filing No. 10-2 at 18]. The final sentence confuses the issue even further, as the ALJ notes that Sandra W. "would have had no more than a mild limitation." [Filing No. 10-2 at 18.] These findings cannot exist at once, and it is unclear whether the ALJ determined that Sandra W. had a mild limitation, no limitation, or a "no more than mild" limitation. The intent of the ALJ also cannot be discerned from the rest of the opinion, since the ALJ marshals evidence for and against a limitation in concentrating, persisting, or pace but not other functional areas. [*Compare* Filing No. 10-2 at 18 ("The claimant's medically determinable mental impairments of anxiety and depression . . . did not cause more than minimal limitation . . . .")*, with* [Filing No. 10-2 at 18 ("The claimant took anxiety medication for reported nervousness . . . .")]. The ALJ's findings regarding Sandra W.'s mental impairments are contradictory, a quality that "a reasonable person" would not "accept it as adequate to support the conclusion." *See Stevenson*, 105 F.3d at 1153. Therefore, the ALJ on the RFC analysis alone has failed to construct a logical bridge between the medical evidence and her findings that is sufficient to permit the Court to engage in meaningful judicial review of those findings. *See, e.g.*, *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (explaining that the ALJ "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings").

The ALJ's questioning to the VE about Sandra W.'s impairments similarly "fell short." *See Young*, 362 F.3d at 1004 ("For all of the reasons that the RFC fell short, the hypothetical question, which was based entirely on that RFC did as well.").  The ALJ asked the vocational expert about potential employment in regard to, *inter alia*, exposure to humidity and respiratory irritants, [Filing No. 10-2 at 46], as well as exertional limitations on pushing, pulling, lifting, and carrying, [Filing No. 10-2 at 15-16], but there were no questions about potential limitations in concentrating, persistence, and pace.

Nor do exceptions to the rule that the ALJ must apprise the VE of those limitations apply in this case.  The ALJ's questions implied that the VE reviewed the record, [Filing No. 10-2 at 43 ("Q[:] Based upon your [the VE's] review of the record, could you classify any past work that [Sandra W.] has?")], but the ALJ's increasingly rigorous hypothetical questioning left little room for considering concentrating, persisting, and maintaining pace.  Upon re-examination, the ALJ "instructed [the VE] to assume for all future questions . . . that the only past relevant work" Sandra W. had was "kitchen helper and cashier II."  [Filing No. 10-2 at 46.]  The ALJ then made the hypothetical more stringent, supposing the kind of work possible with no exertional limitations but restricting environmental limitations to those "with no concentrated exposure to humidity, . . . fumes, odors, dusts, and gases." [Filing No. 10-2 at 46].  The ALJ made the hypothetical more stringent again, asking "if everything were the same" but there was an exertional limitation, where "the person could lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently," "sit for six hours out of an eight-hour workday," and "could stand and walk, in combination, for six hours out of an eight-hour workday." [Filing No. 10-2 at 47-48.]  The ALJ added a more stringent hypothetical a final time, adding "if the age of the person changed from an individual of advanced age to an individual closely approaching retirement age." [Filing No. 10-2 at 48-49.]  The VE's

answers remained largely unchanged and focused purely on physical and environmental restrictions, without accounting for any mental impairments.

Likewise, it was not "manifest" in the ALJ's questioning that the underlying conditions of depression and anxiety were included implicitly in the questioning. Recommendations for low-stress, repetitive work were neither provided nor asked for during the VE questioning nor were the underlying conditions or symptoms of difficulties concentrating, persisting, and maintaining pace described. Instead, non-low-stress work was recommended, that of childcare attendant. [*See* Filing No. 10-2 at 50-51.]

In failing to articulate a clear finding on Sandra W.'s mental impairments, the ALJ has failed to construct a logical bridge between the medical evidence and her RFC determination. This error carried over into the ALJ's questioning of the VE, which did not properly account for potential mental impairments. In light of these errors, the ALJ's decision cannot stand. *See Young, 362 F.3d at 1005*.

**B.  Whether the ALJ Erred in Concluding, without a Physician's Opinion, that Sandra W.'s Asthma and COPD Did Not Limit her RFC**

Sandra W. argues that, because the record did not contain any medical opinion concerning whether her COPD and asthma caused exertional limitations, it was error for the ALJ to rely on her own lay opinion in concluding that no such limitations were warranted. [Filing No. 13 at 12-19.] She asserts that a doctor's note merely directing her to "[a]void triggers" is not sufficient to establish that she was not limited in her ability to walk, stand, lift, carry, push, and pull, and therefore "[t]here are no medical opinions in the record about what [she] could and could not do." [Filing No. 13 at 16-17.]

The Court need not resolve this issue because it finds that issue discussed above is dispositive. Nevertheless, on remand, the ALJ should take care to fulfill her obligations to build

a logical bridge from the evidence to the conclusion and to avoid relying on lay opinions to fill evidentiary gaps in the record where medical opinions are necessary. *See, e.g.*, *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003).

# IV.
## CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Sandra W. benefits and **REMANDS** this matter pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this decision. On remand, the ALJ must ensure that she has considered all the medical evidence and built an accurate and logical bridge from that evidence to her conclusions, including in the residual functional capacity assessment and the hypothetical questions to the vocational expert. Final judgment shall issue accordingly.

Date: 3/26/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**